IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID WICHTERMAN, JR.,** as Administrator of the Estate of Daniel Wichterman,<br>　　　　Plaintiff, | CIVIL ACTION |
| v. | NO. 16-5796 |
| **CITY OF PHILADELPHIA,**<br>**CORIZON HEALTH,**<br>**POLICE CORRECTIONAL OFFICER**<br>**JUSTIN AVERY,**<br>**POLICE CORRECTIONAL OFFICER**<br>**WILLIAM GWALTHNEY,** and<br>**TAIRU WAHABU, RN,**<br>　　　　Defendants. | |

DuBois, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　April 17, 2017

**M E M O R A N D U M**

### I.　　INTRODUCTION

This is a civil rights survival and wrongful-death action arising out of 29-year-old Daniel Wichterman's ("Mr. Wichterman") death while in the custody of the Philadelphia Police Department. Plaintiff, David Wichterman, Jr., filed suit as Administrator of the Estate of Daniel Wichterman against several defendants, including the City of Philadelphia ("the City"). Plaintiff asserts a *Monell* claim under 42 U.S.C. § 1983 against the City for violation of Mr. Wichterman's Eighth and Fourteenth Amendment rights. Presently before the Court is the City's Motion to Dismiss. For the reasons that follow, the Court denies the Motion.

### II.　　BACKGROUND

The facts as alleged in plaintiff's Complaint are as follows. On January 30, 2015, at approximately 3:45 p.m., Philadelphia police found Mr. Wichterman in the driver's seat of a car that had been involved in an earlier accident in Northeast Philadelphia. Compl. ¶ 13. Police

1

removed Mr. Wichterman from the vehicle and noted that he had "slow speech, was wobbly while standing, and had trouble keeping his eyes open." Compl. ¶ 14. After Mr. Wichterman told the police he had been using heroin, they arrested him for driving under the influence. Compl. ¶¶ 15-16.

The police transported Mr. Wichterman to the Police Detention Unit ("PDU"), the only police unit in the city which has medical staff available at all times. Compl. ¶¶ 17-18. Any person who is arrested and charged with driving under the influence in Philadelphia is taken to PDU for blood testing and monitoring. Compl. ¶ 20.

Mr. Wichterman arrived at the PDU at approximately 5:40 p.m., roughly two hours after his arrest. Compl. ¶ 32. A nurse at the PDU, Tairu Wahabu, drew Mr. Wichterman's blood as part of the driving under the influence investigation at 6:12 p.m. Compl. ¶ 33. A police officer, present during the blood draw, noted that Mr. Wichterman was "observed to have constricted pupils, slow lethargic speech and movements, [and a] raspy voice." Compl. ¶ 35. Despite observing these signs, the nurse and police officer allowed Mr. Wichterman to be placed in a cell. Compl. ¶¶ 36-40. From 6:12 p.m. until approximately 8:00 p.m., Mr. Wichterman remained in a cell, unmonitored and untreated. Compl. ¶ 41.

Police Correctional Officers Justin Avery and William Gwalthney ("officers") went to Mr. Wichterman's cell at approximately 8:00 p.m. to escort him to another area of the PDU for fingerprinting. Compl. ¶ 42. Mr. Wichterman appeared to be asleep, and the officers unsuccessfully attempted to wake him. Compl. ¶¶ 43-44. Despite knowing that Mr. Wichterman was arrested for driving under the influence and admitted to using heroin, the officers left Mr. Wichterman in his cell without seeking medical assistance. Compl. ¶¶ 45-47. For the next two hours, Mr. Wichterman remained in his cell, unmonitored and untreated. Compl. ¶ 48.

Between 10:00 and 10:15 p.m., the officers returned to Mr. Wichterman's cell to escort another man to the restroom. Compl. ¶ 49. That man informed the officers they should examine Mr. Wichterman because he appeared ill. Compl. ¶ 50. The officers again attempted to wake Mr. Wichterman but were unable to do so. Compl. ¶ 51. They then summoned a nurse on staff, who noted that Mr. Wichterman was unresponsive and began CPR. Compl. ¶¶ 52-53. Mr. Wichterman was transported to Hahnemann Hospital and arrived there just after 11:00 p.m. Compl. ¶¶ 54-56. He remained unresponsive and, shortly after 11:31 p.m., was pronounced dead. Compl. ¶ 56. A later autopsy confirmed that Mr. Wichterman's death was caused by "drug intoxication." Compl. ¶ 57.

## III. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

A. Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Typically, a prisoner challenging the conditions of his confinement or the adequacy of his medical treatment asserts claims under the Eighth Amendment's prohibition of cruel and unusual punishment. In this case, however, the Eighth Amendment does not apply because, at all relevant times, plaintiff was a pretrial detainee—not a convicted prisoner. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Instead, plaintiff's claims are evaluated, in part, under the Due Process Clause of the Fourteenth Amendment, which encompasses the same standards applied under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *see also Montgomery v. Ray*, 145 F. App'x 738, 740 ("While the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner, the proper standard [is] . . . whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt.").

B. *Monell* Claim

The Court analyzes plaintiff's § 1983 claim against the City under the standard of municipal liability first enunciated in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, to state a claim against a municipal entity under § 1983, a plaintiff must allege (1) a constitutional violation by a state actor (2) that was caused by a municipal policy or custom. *Id.* at 694; *see also Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d

227, 237 (3d Cir. 2013). A policy is established when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while practices that are "so permanent and well-settled as to virtually constitute law" are considered custom. *Mulholland*, 706 F.3d at 237.

## IV. DISCUSSION

In its Motion to Dismiss, the City contends that plaintiff (1) has not pled actual facts regarding a municipal policy or custom, (2) fails to factually allege any actionable conduct by a municipal decisionmaker, and (3) cannot state a failure-to-train claim because the Complaint does not identify specific instances of prior police misconduct caused by allegedly inadequate training. Mot. at 5. The Court considers each argument in turn.

### A. Municipal Policy or Custom

The City argues that plaintiff "simply parrots the legal standard for municipal liability" without pleading any supporting facts. The Court disagrees.

"A plaintiff is not obligated to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to [an individual's] injuries." *Rodriguez v. City of Phila.*, No. 14-CV-7362, 2015 WL 4461785, at *4 (E.D. Pa. July 21, 2015). In his Complaint, plaintiff alleges that Philadelphia police and the City were aware of increased heroin use and the serious risk of overdose, Compl. ¶¶ 25-31, and that the City's failure to establish appropriate policies, practices, and training resulted in the officers' failure to provide treatment to Mr. Wichterman, *Id.* at ¶ 63.

In a factually similar case, *Kenney v. Montgomery County*, this Court denied a County's Motion to Dismiss where "plaintiff allege[d] . . . that defendants failed to develop and implement policies, practices, and procedures, including those involving training, supervision, and

discipline, that would ensure inmates receive appropriate care and necessary referrals. Further, that plaintiff focuses on the effect of this policy or practice on one inmate is inconsequential." No. 13-2590, 2013 WL 5356862, at * 7 (E.D. Pa. Sept. 25, 2013). At this stage, plaintiff's allegations are sufficient to plead a municipal policy, practice, or custom.

B. Conduct by a Specific Policymaker

The City contends that plaintiff's claim against it should be dismissed because plaintiff does not identify a policymaker involved in the formation of a municipal custom or policy. The Court disagrees.

The United States Court of Appeals for the Third Circuit has held that a municipal policymaker need not be "specifically identified by the plaintiff's evidence. Practices so permanent and well-settled as to have the force of law [are] ascribable to municipal decisionmakers." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Olivieri v. Cty. of Bucks*, 502 F. App'x 184, 189 (3d Cir. 2012) ("This does not mean, however, that the policymaker must be specifically identified by the plaintiff's evidence; rather, practices so widespread as to have the force of law are ascribable to local government policymakers. If custom is established by proof of knowledge and acquiescence, then a single application of the custom can suffice to show liability.").

In this case, plaintiff alleges that "reasonably trained . . . police officers were particularly attuned to patterns of heroin and opiate abuse due to the disproportionately high number of heroin and opiate abusers typically present in a population of arrestees/pretrial detainees" and were "aware of the significant risk of overdose among heroin and opiate users." Compl. ¶¶ 25-26. Plaintiff also asserts that "reasonably trained . . . police officers were aware of the available and effective means of intervention to reverse the effects of heroin and/or opiate overdose."

6

Compl. ¶ 28. Finally, plaintiff alleges that, notwithstanding this knowledge, the City failed to implement appropriate policies and practices for the treatment of arrestees suffering from drug overdose, causing the violations of Mr. Wichterman's constitutional rights. Compl. ¶ 80.

The City's alleged failure to implement appropriate policies and practices, resulting in two police officers and one nurse ignoring Mr. Wichterman's overdose, constitutes a practice or custom that is ascribable to municipal decisionmakers at this stage of the proceedings. Accordingly, plaintiff's allegations are sufficient to state a claim against the City. *See Natale*, 318 F.3d at 584 ("A reasonable jury could infer that 'a system responsible for assessing the medical needs of all incoming prisoners would be the product of a decision maker's action or acquiescence. It could also infer that the failure to establish a more responsive policy caused the specific constitutional violation of which the Natales complain, *i.e.*, the failure to administer insulin to Daniel Natale in a timely fashion.'"); *see also Koukos v. Chester Cty.*, No. 16-4602, 2017 WL 511634, at *9 (E.D. Pa. Feb. 7, 2017) ("Finally, Koukos alleges that the County's failure to establish appropriate policies and procedures for the monitoring and treatment on inmates undergoing detoxification [from opiates] after admission in turn led to the failure of the individual Defendants to adequately monitor, assess and treat him. These allegations are sufficient to state a claim.")

    C.    <u>Prior Instances of Police Misconduct Resulting From Inadequate Training</u>

Finally, the City argues that plaintiff's failure-to-train claim fails because plaintiff does not identify prior instances of police misconduct resulting from allegedly inadequate training. The Court disagrees.

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train . . . . Without

notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). However, "in certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014). "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Id.* at 223-24.

In this case, plaintiff alleges that "reasonably trained . . . police supervisors were aware of their responsibilities to train . . . police to recognize the signs of overdose and to intervene to reverse the effects of overdose." Compl. ¶ 29. Plaintiff also alleges that "[d]efendant City of Philadelphia, as an entity that operates a prison system and police holding cells, is aware of the need to train its employees as described above." Compl. ¶ 31. In similar circumstances, courts have concluded that failure-to-train claims based on a single incident state a claim under *Monell*. *See Thomas*, 749 F.3d at 223-24 (holding inmate-on-inmate assault was predictable result of failure to train correctional staff in de-escalation techniques); *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 575, 580 (3d Cir. 2004) (permitting failure to train claim involving single incident of assault on juvenile facility detainee based on lack of training to identify potential victims of physical attack); *Koukos*, 2017 WL 511634, at *11 ("Koukos's allegations regarding inadequate training with respect to the care of inmates undergoing opiate detoxification and withdrawal are sufficiently specific and connected to his injuries to plausibly state a claim."); *Hall v. Raech*, No. 08-5020, 2009 WL 811503, at *5 (E.D. Pa. Mar. 25, 2009) (defendant's failure to train police officers to identify symptoms of diabetic episode was

8

sufficient to state a *Monell* claim). At this stage, plaintiff's allegations with respect to the lack of training on monitoring and treating detainees on opiates are sufficient to state a *Monell* claim against the City based on a failure-to-train theory.

## V. CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss is denied. An appropriate order follows.