**xIN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID WICHTERMAN, JR., as ADMINISTRATOR of the ESTATE OF DANIEL WICHTERMAN,** | **CIVIL ACTION** |
| **Plaintiff,** | **No. 16-5796** |
| **v.** | **JURY TRIAL DEMANDED** |
| **CITY OF PHILADELPHIA; TEHUM CARE SERVICES, INC. (formerly known as CORIZON HEALTH); POLICE CORRECTIONAL OFFICER JUSTIN AVERY; POLICE CORRECTIONAL OFFICER WILLIAM GWALTHNEY; POLICE CORRECTIONAL OFFICER JOYNER, BADGE NO. 114; TAIRU WAHABU, RN; YITZCHAK LEFKOWITZ a/k/a ISAAC LEFKOWITZ; SARA ANN TIRSCHWELL; AYODEJI OLAWALE LADELE; BEVERLY MICHELLE RICE; JEFFREY SCOTT KING; JENNIFER LYNNE FINGER; FRANK JEFFREY SHOLEY,** | |
| **Defendants.** | |

# SECOND AMENDED COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is a civil rights survival and wrongful death action brought under 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the defendants' deliberate indifference and negligence in failing to ensure necessary emergency treatment for plaintiff's decedent, 29-year-old Daniel Wichterman, while he was suffering from an opiate overdose. As a result of the defendants' failure to use readily available and effective methods to intervene, Mr. Wichterman died due to an overdose less than eight hours after he was taken into police custody.

Plaintiff David Wichterman, Jr., now seeks on behalf of Mr. Wichterman's estate and heirs damages for the substantial pain and suffering, financial losses and loss of life caused by the defendants' conduct.

2. Plaintiff additionally brings claims against a number of directors and officers of the company formerly known as Corizon Health and various related companies based on these directors' and officers' participation in, among other things, the fraudulent restructuring of Corizon Health's successor entities for the purpose of avoiding financial accountability in wrongful death and personal injury cases like this action.

3. Plaintiff files this Second Amended Complaint for the express purpose of adding claims against the directors and officers of the company formerly known as Corizon Health. As this case has been in litigation since 2016, certain of plaintiff's claims and certain defendants have been dismissed by prior rulings of this Court. This pleading, however, maintains all claims as originally asserted in order to preserve those claims for appellate purposes.

## II. JURISDICTION

4. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## III. PARTIES

5. Daniel Wichterman (hereinafter, "Mr. Wichterman"), who was at all times relevant to this Complaint a resident of Philadelphia, Pennsylvania, died on January 30, 2015. At the time of his death, he was 29 years old.

6. Plaintiff David Wichterman, Jr., (hereinafter, "plaintiff") is the brother of Daniel Wichterman. On January 12, 2016, plaintiff was appointed as the Administrator of the Estate of Daniel Wichterman by the Office of the Register of Wills of Philadelphia County. Plaintiff

brings this action in his capacity as Administrator of the Estate and for the benefit of Mr. Wichterman's heirs.

7. Defendant City of Philadelphia is a municipal government entity in the Commonwealth of Pennsylvania, which manages and oversees the Philadelphia Police Department and employs defendants Avery, Gwalthney, and Joyner.

8. Defendant Tehum Care Services, Inc. ("Tehum"), is the successor entity to the company formerly known as Corizon Health, with a principal place of business in Texas. Tehum, as the successor entity, was, at all times relevant to this Complaint, the holder of a contract to provide medical services at the Philadelphia Police Department's Police Detention Unit in the Philadelphia Police Administration Building. Plaintiff identifies Tehum as a nominal defendant that was operated through the individual director and officer defendants identified below. Tehum has no assets, and plaintiff seeks no recovery from Tehum. References to Corizon Health throughout this Second Amended Complaint are intended to refer to Tehum.

9. At all times relevant to this Complaint, defendant Police Correctional Officer Justin Avery was employed by the Philadelphia Police Department as a Police Correctional Officer assigned to the Police Detention Unit in the Philadelphia Police Administration Building.

10. At all times relevant to this Complaint, defendant Police Correctional Officer William Gwalthney was employed by the Philadelphia Police Department as a Police Correctional Officer assigned to the Police Detention Unit in the Philadelphia Police Administration Building.

11. At all times relevant to this Complaint, defendant Police Correctional Officer Joyner, Badge No. 114, was employed by the Philadelphia Police Department as a Police

Correctional Officer assigned to the Police Detention Unit in the Philadelphia Police Administration Building

12. At all times relevant to this Complaint, defendant Tairu Wahabu, RN, was a Registered Nurse employed by defendant Corizon Health and assigned to provide medical services at the Philadelphia Police Department's Police Detention Unit.

13. Defendant Yitzchak Lefkowitz a/k/a Isaac Lefkowitz is, in relevant part, the sole director of Tehum and a former director of Corizon. He has regularly conducted business in Philadelphia through his companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

14. Defendant Sara Ann Tirschwell is, in relevant part, a former Chief Executive Officer of Corizon and a former Chief Executive Officer of one of Corizon's successor entities. She has regularly conducted business in Philadelphia through her companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

15. Defendant Ayodeji Olawale Ladele is, in relevant part, a former Executive Vice President and Chief Medical Officer for Corizon and one of Corizon's successor entities. He has regularly conducted business in Philadelphia through his companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

16. Defendant Beverly Michelle Rice is, in relevant part, a former Corporate Controller for Corizon and a current Corporate Controller for one of Corizon's successor entities. She has regularly conducted business in Philadelphia through her companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

17. Defendant Jeffrey Scott King is, in relevant part, a former Chief Legal Officer for Corizon and a current Executive Vice President and Chief Legal Officer for one of Corizon's

successor entities. He has regularly conducted business in Philadelphia through his companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

18. Defendant Jennifer Lynne Finger is, in relevant part, a former Assistant General Counsel for Corizon and a current Assistant General Counsel for one of Corizon's successor entities. She has regularly conducted business in Philadelphia through her companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

19. Defendant Frank Jeffrey Sholey is, in relevant part, a former Chief Financial Officer for Corizon and a current Chief Executive Officer for one of Corizon's successor entities. He has regularly conducted business in Philadelphia through his companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

20. At all times relevant to this Complaint, all defendants acted under color of state law.

21. At all times relevant to this Complaint, defendant Wahabu was acting as an agent, servant, and/or employee of defendant Corizon Health, was acting within the scope and course of his employment, and was acting under the direct control and supervision of defendant Corizon Health. Corizon Health, its successor entities, and the directors and officers named in this Second Amended Complaint are therefore liable for Wahabu's negligent conduct on a *respondeat superior* theory of liability.

22. At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Mr. Wichterman.

## IV. FACTUAL ALLEGATIONS

### A. Mr. Wichterman's Death is Caused by Defendants' Misconduct

23. At approximately 3:45 p.m. on January 30, 2015, Mr. Wichterman was found by Philadelphia police in the driver's seat of a car which had been in an accident on a street in Northeast Philadelphia.

24. Police removed Mr. Wichterman from the car and noted that he had slow speech, was wobbly while standing, and had trouble keeping his eyes open.

25. Mr. Wichterman informed the police that he had been using heroin.

26. The police placed Mr. Wichterman under arrest for driving under the influence.

27. The police transported Mr. Wichterman to the Police Detention Unit ("PDU") at the Police Administration Building at 8th and Race Streets in Philadelphia.

28. The PDU is the only police unit in Philadelphia which has medical staff available at all times to address the medical needs of arrestees.

29. The medical staff who are assigned to the PDU are employees of defendant Corizon Health, a company which publicizes itself as an expert provider of correctional health care and which holds a contract with defendant City of Philadelphia to provide medical services at the PDU and other facilities in Philadelphia.

30. Because Corizon Health medical personnel are available at all times at the PDU, any person who is arrested and charged with driving under the influence in Philadelphia is immediately transported to the PDU for purposes of blood testing and for monitoring of health conditions related to intoxication.

31. Mr. Wichterman's statement to police that he was using heroin was not uncommon for persons arrested in Philadelphia in January 2015.

32. As known by police and correctional healthcare professionals, the abuse of heroin and other opiate-based controlled substances had increased dramatically in the years preceding Mr. Wichterman's arrest.

33. During that time period, patterns of heroin and opiate abuse showed particularly significant increases among young men of the same demographic background as Mr. Wichterman.

34. Reasonably trained correctional health practitioners and police officers were aware of these patterns of increased abuse of heroin and other opiate-based controlled substances.

35. Reasonably trained correctional health practitioners and police officers were particularly attuned to patterns of heroin and opiate abuse due to the disproportionately high number of heroin and opiate abusers typically present in a population of arrestees/pretrial detainees.

36. Reasonably trained correctional health practitioners and police officers were, likewise, aware of the significant risk of overdose among heroin and opiate users.

37. Although heroin and/or opiate overdose is a highly dangerous and potentially deadly emergency, there were in 2015 readily available and effective means of medical intervention to reverse the effects of overdose.

38. In 2015, reasonably trained correctional health practitioners and police officers were aware of the available and effective means of intervention to reverse the effects of heroin and/or opiate overdose.

39. Additionally, reasonably trained correctional health and police supervisors were aware of their responsibilities to train correctional health personnel and police to recognize the signs of overdose and to intervene to reverse the effects of overdose.

40. Defendant Corizon Health, as an entity that regularly practices correctional health care and holds itself out as expert in the medical issues presented in populations in the criminal justice system, is aware of the need to train its employees as described above.

41. Defendant City of Philadelphia, as an entity that operates a prison system and police holding cells, is aware of the need to train its employees as described above.

42. Mr. Wichterman arrived at the PDU at approximately 5:40 p.m. on January 30, 2015.

43. At approximately 6:12 p.m., Mr. Wichterman was subjected to a blood draw as part of the police investigation into driving under the influence charges.

44. The blood draw was conducted by defendant Wahabu.

45. A police officer who was present for the blood draw made contemporaneous notes about Mr. Wichterman's appearance. The officer stated that Mr. Wichterman was "observed to have constricted pupils, slow lethargic speech and movements, [and] raspy voice."

46. Defendant Wahabu was aware of Mr. Wichterman's condition. He also was aware that Mr. Wichterman had been in police custody for more than two hours and that his condition had not improved since he was initially taken into custody.

47. Based on Mr. Wichterman's presentation at 6:12 p.m., defendant Wahabu was aware that Mr. Wichterman was likely to have overdosed on heroin/opiates or some other drug.

48. Based on Mr. Wichterman's condition and defendant Wahabu's knowledge of that condition, defendant Wahabu knew that Mr. Wichterman had serious medical needs and was at risk for harmful medical consequences, including death.

49. Despite his knowledge of these facts, defendant Wahabu took no action to protect Mr. Wichterman from the consequences of a potential overdose.

50. Instead, defendant Wahabu allowed Mr. Wichterman to be placed in a cell without any further medical monitoring or intervention.

51. Mr. Wichterman remained in a cell from shortly after 6:12 p.m. until approximately 8:00 p.m.

52. At approximately 8:00 p.m., defendants Avery, Gwalthney, and Joyner went to Mr. Wichterman's cell for the purpose of escorting to him to another area of the PDU for fingerprinting.

53. Defendants Avery, Gwalthney, and Joyner went into Mr. Wichterman's cell and noted that he appeared to be asleep.

54. Defendants Avery, Gwalthney, and Joyner attempted to rouse Mr. Wichterman but were unable to do so.

55. Defendants Avery, Gwalthney, and Joyner knew that Mr. Wichterman had been arrested for driving under the influence and knew that he had reported having used heroin.

56. As defendants Avery, Gwalthney, and Joyner were aware, the fact that Mr. Wichterman has reported using heroin and that he could not be roused was an alarming sign that Mr. Wichterman was experiencing a drug overdose.

57. Despite the sign of a clear medical emergency and the defendant police correctional officers' knowledge that urgent medical attention was needed, they left Mr. Wichterman in his cell and took no further action.

58. No Corizon Health or City of Philadelphia employee assessed Mr. Wichterman at any point in the next two hours.

59. Between 10:00 and 10:15 p.m., defendants Avery and Gwalthney returned to Mr. Wichterman's cell to allow another man in the cell out of the cell to use the bathroom.

60. The other man in the cell told defendants Avery and Gwalthney that they should examine Mr. Wichterman because he appeared ill.

61. Defendants Avery and Gwalthney attempted to rouse Mr. Wichterman again and were unsuccessful.

62. This time, when they could not rouse him, they summoned defendant Wahabu.

63. Defendant Wahabu arrived at the cell and noticed that Mr. Wichterman was unresponsive. He began to conduct CPR and paramedics were called.

64. Paramedics arrived at the PDU and transported Mr. Wichterman to Hahnemann Hospital.

65. Mr. Wichterman arrived at Hahnemann Hospital shortly after 11:00 p.m.

66. Mr. Wichterman remained unresponsive, and, at 11:31 p.m., he was pronounced dead.

67. An autopsy was conducted and concluded that Mr. Wichterman's death was caused by "drug intoxication," that is, an opiate overdose.

68. After Mr. Wichterman's death, Philadelphia police investigated what occurred at the PDU.

69. Police interviewed defendant Wahabu about his interactions with Mr. Wichterman at the time of the blood draw at approximately 6:12 p.m.

70. Defendant Wahabu gave a written statement to police in which he reported that "when [Mr. Wichterman] first came into the detaining area he was awake and alert with no slurred speech and followed all commands."

71. Defendant Wahabu's statement concerning Mr. Wichterman's appearance was false.

72. Defendant Wahabu made this false statement in an effort to cover up and conceal the fact that he had taken no action to address Mr. Wichterman's obvious and serious medical needs when Mr. Wichterman presented for the blood draw at 6:12 p.m.

73. The failures of the defendants Avery, Gwalthney, Joyner and Wahabu to provide or seek emergency medical attention for Mr. Wichterman when he presented with obvious signs of drug overdose were due to the failure of defendants City of Philadelphia and Corizon Health, with deliberate indifference, to establish appropriate policies, practices, procedures, and training regarding the treatment of arrestees suffering from apparent drug overdose.

74. Mr. Wichterman's death was the direct and proximate result of the actions and inactions of defendants City of Philadelphia, Corizon Health, Avery, Gwalthney, Joyner, and Wahabu as described above.

75. At all relevant times, defendants City of Philadelphia, Corizon Health, Avery, Gwalthney, Joyner, and Wahabu were aware of Mr. Wichterman's serious medical needs and failed, with deliberate indifference, to ensure that Mr. Wichterman received needed evaluation and treatment.

76. In the alternative, defendants Avery, Gwalthney, Joyner, and Wahabu made an intentional decision with regard to Mr. Wichterman's medical care which placed Mr. Wichterman at substantial risk of suffering serious harm. These defendants did not take reasonable available measures to abate that risk, even though a reasonable police officer and/or nurse in the circumstances would have appreciated the high degree of risk involved, thereby making the consequences of the defendants' conduct obvious.

77. At all times relevant to this Complaint, the conduct of all defendants was in willful, reckless, and callous disregard of Mr. Wichterman's rights under federal and state law.

78. As a direct and proximate result of the conduct of all defendants, Mr. Wichterman experienced enormous physical and emotional pain and suffering.

79. As a direct and proximate result of the conduct of all defendants, Mr. Wichterman was caused to lose his life and thereby caused to suffer complete loss of earnings and earning capacity.

### B. The Directors' and Officers' Misconduct in Connection with the Corizon Bankruptcy Proceedings

80. This case has been in litigation since 2016. After long delays caused by extensive summary judgment motion practice, Covid-related court and office closures, and reassignment of the case following the retirement of the presiding Judge, the Court scheduled a final pretrial conference for February 28, 2023. Based on prior rulings, plaintiff intended to proceed to trial with negligence claims against defendant Wahabu and *respondeat superior* claims against defendant Corizon Health.

81. Two weeks before that final pretrial conference, on February 16, 2023, counsel for defendant Wahabu and Corizon Health filed a Suggestion of Bankruptcy notifying the Court that Corizon's successor entity, Tehum, had initiated bankruptcy proceedings in the U.S.

Bankruptcy Court for the Southern District of Texas. The Court immediately stayed all proceedings in this case, and this litigation has remained in that stayed status for more than three years.

82. Since that time, the individual director and officers named as defendants here engaged in significant fraudulent conduct in connection with the bankruptcy proceedings, *In re: Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex.).

83. The origin of the fraudulent conduct dates to the months leading up to May 2022, when Corizon Health, Inc. undertook a significant corporate restructuring designed to insulate its profitable operations from massive liabilities. Corizon re-incorporated in Texas and executed a divisive merger under Texas state law.

84. As a result of this divisive merger, a new entity called YesCare Corp. received all of Corizon's active contracts, representing approximately $200 million in annual government payment, operational infrastructure, management personnel, and ongoing business operations.

85. Tehum was created as a shell entity and assigned approximately $1.2 billion in liabilities. Many of those liabilities were from pending litigation concerning improper medical care provided by Corizon Health and its employees and agents at detention centers, jails, and prisons throughout the United States. This case brought by plaintiff David Wichterman, Jr., on behalf of the Estate of Daniel Wichterman, was included as a liability assigned to Tehum.

86. In light of those liabilities, Tehum was the entity that filed the Chapter 11 bankruptcy petition referenced above.

87. The filing of the bankruptcy was part of a process known as the Texas Two-Step. The restructuring was orchestrated and executed with the deliberate participation of a tightly knit group of insiders who maintained control over both Tehum and YesCare. Those insiders include

defendants Lefkowitz, Sholey, Tirschwell, King, Ladele, Rice, and King (collectively "director and officer defendants"). As outlined below, each of these defendants engaged in conduct that rendered them alter egos of the corporate entities on whose behalf they purported to act.

88. Defendant Isaac Lefkowitz served as the decision maker for an entity called Perigrove 1018. That entity had acquired Tehum's ultimate parent, M2 HoldCo, LLC, in December 2021. M2 LoanCo, LLC became the entity that served as Tehum's secured lender. Between December 2021 and November 2022, defendant Lefkowitz arranged for the transfer of $24.5 million from Corizon and ultimately to M2 Loan Co. That entity had only two directors: Isaac Lefkowitz and another person not named in this case. The entity had no employees and maintained no email records on its own server.

89. Additionally, Lefkowitz was the "Interim CEO" of an entity called Valitas Health, which was at the time Corizon's parent company. In December 2021, Lefkowitz executed a consulting agreement with a company called Geneva Consulting, an entity controlled by Perigrove 1018, and directed others, including defendant Jeffrey Sholey, to pay $5.5 million from Corizon to Geneva Consulting.

90. Defendant Frank Jeffrey Sholey served as Chief Financial Officer of Corizon Health and seamlessly transitioned to become Chief Executive Officer of YesCare Corp., the entity that took on Corizon's profitable assets, thereby demonstrating direct continuity of management and control between the pre and post restructuring entities. As CFO, Sholey had direct personal involvement in executing the financial transfers to Geneva Consulting at Lefkowitz's direction, had intimate knowledge of the restructuring's financial mechanics, and directly benefited from the scheme by obtaining the CEO position at the then-profitable successor.

91. Defendant Sara Ann Tirschwell served as Chief Executive Officer of both Corizon Health, Inc. and YesCare Corp. As CEO of both entities, Tirschwell had ultimate executive authority over the operational decisions of both entities during the relevant period.

92. Defendant Jeffrey Scott King served as Chief Legal Officer at Corizon Health, Inc. and transitioned to the same role at YesCare Corp. as Executive Vice President and Chief Legal Officer. As CLO, King had direct involvement in structuring, reviewing, and approving the legal mechanics of the divisive merger and the Texas Two-Step restructuring.

93. Defendant Ayodeji Olawale Ladele served as the Executive Vice President and Chief Medical Officer for Corizon and transitioned to the same roles for YesCare Corp. In these positions, Ladele was intimately involved in operational decision making of both entities during the relevant period.

94. Defendant Beverly Michelle Rice served as the Corporate Controller for Corizon and transitioned to the same roles for YesCare Corp. In these positions, Rice was intimately involved in operational decision making of both entities during the relevant period.

95. Defendant Jennifer Lynne Finger served as the Assistant General Counsel for Corizon and transitioned to the same role for YesCare Corp. In these positions, Finger was intimately involved in operational decision making of both entities during the relevant period.

96. In the time period leading up to and following the divisive merger, the above-listed defendants, led by Lefkowitz, used Corizon as an instrumentality. Lefkowitz, in particular, siphoned money away from Corizon and paid that money to entities over which he had exclusive or near-exclusive control. Each of the other defendants aided and abetted Lefkowitz in these efforts, or, at a minimum, recklessly disregarded the substantial improper withdrawals of funds from Corizon.

97. The transfer of these funds, among multiple other transactions, directly led to a failure on the part of parties to the Tehum bankruptcy proceedings to comply with obligations under a final Chapter 11 Plan of Reorganization ("Plan").

98. That Plan was entered by the Bankruptcy Court on March 3, 2025. *In re: Tehum Care Services*, No. 23-90086, ECF 2014 (Bankr. S.D. Tex.).

99. In relevant part, the Plan provided for payments totaling $50 million to be used to resolve the claims of, among others, tort claimants like plaintiff in this matter.

100. The Plan also implemented a "Channeling Injunction" that prohibited tort claimants from pursuing litigation against Tehum, its successors, or any individual directors and officers. The Plan specifically identified a list of "Released Parties" who could not be sued in connection with any claim brought by tort claimants.

101. The Released Parties identified in the Plan included each of the director and officer defendants named in this pleading. *In re: Tehum Care Services*, No. 23-90086, ECF 2014 at ECF p. 76, ¶ 175 (Bankr. S.D. Tex.)

102. During negotiations to develop the Plan, Tehum's counsel and principals insisted that each of the director and officer defendants named in this pleading be included as Released Parties, thus acknowledging that each director and officer defendant was accountable for Tehum's liabilities but for protections offered under bankruptcy law.

103. The Plan expressly conditioned the Channeling Injunction on the compliance of the Released Parties with the payment terms of the Plan. Thus, the Plan provided that if there was a default on obligations to pay the required $50 million to satisfy personal injury and wrongful death claims, the Injunction would be dissolved and tort claimants, like plaintiff in this case, would have 90 days to bring causes of action against the Released Parties.

104. In late 2025, the Released Parties failed to make a payment required under the Plan. After the Released Parties were offered an opportunity to cure the failure, in February 2026, they failed to make another payment.

105. These payment failures constituted a default under the Plan.

106. On March 4, 2026, the trustees charged with administering payments to personal injury and tort claimants, like plaintiff in this case, filed in the bankruptcy proceedings a Notice of Failure to Cure Settlement Payment Default, and a copy of the Notice was served on plaintiff. *In re: Tehum Care Services, Inc.*, No. 23-90086, ECF 2617 (Bankr. S.D. Tx.). The Notice provided the following:

a. As a result of the default, all injunctions contemplated under the Plan that prevented claimants from litigating tort causes of action are terminated and void;

b. All protections provided to the Released Parties are terminated;

c. All claimants whose claims were addressed in the Plan are permitted to bring causes of action against the Released Parties; and

d. All statutes of limitations that would apply to claims against the Released Parties are tolled for a period of 90 days from the date on which the Notice of Default was filed, that is, until June 3, 2026.

107. Due to these developments in the bankruptcy proceedings, plaintiff now brings causes of action against the director and officer defendants.

108. None of the director and officer defendants is a party to any bankruptcy proceeding, and, as such stays of litigation that would otherwise apply under bankruptcy law do not apply to these defendants, and this litigation may proceed.

109. Plaintiff brings these claims against the director and officer defendants to remedy the substantial injury caused to plaintiff's ability to recover for the liability of defendant Nurse Wahabu under a *respondeat superior* theory of liability against the entity that employed Wahabu. In particular, the failure of the director and officer defendants to comply with their obligations under the Plan that deprived plaintiff of recoveries due under the Plan was caused, at least in part, by the efforts of the director and officer defendants, led by Lefkowitz, to siphon money—at least $30 million—away from Corizon and into entities over which they had exclusive or near-exclusive control.

110. This conduct renders the director and officer defendants liable to plaintiff on the causes of action set forth below.

## V. WRONGFUL DEATH AND SURVIVAL ACTIONS

111. Plaintiff, as Administrator of the Estate of Daniel Wichterman, brings this action on behalf of Mr. Wichterman's heirs under the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301.

112. Mr. Wichterman's heirs under the Wrongful Death Act are:

a. His mother, Donna Werner, 2207 Glenview Street, Philadelphia, PA 19149, and

b. His father, David Wichterman, 1252 Corner Ketch Road, Newark, DE 19711.

113. Mr. Wichterman did not bring an action against defendants for damages for the injuries causing his death during his lifetime.

114. Mr. Wichterman heirs have, by reason of Mr. Wichterman's death, suffered pecuniary loss, and have or will incur expenses for the costs of Mr. Wichterman's funeral, the costs of Mr. Wichterman's headstone, and the costs of administering Mr. Wichterman's estate.

115. Mr. Wichterman's heirs have, by reason of Mr. Wichterman's death, suffered further pecuniary loss including expected contributions and financial support from Mr. Wichterman for food, clothing, shelter, medical care, education, entertainment, recreation and gifts.

116. Plaintiff also brings this action on behalf of the Estate of Daniel Wichterman under the Pennsylvania Survival Statute, 42 Pa. C.S. § 8302, under which all claims Mr. Wichterman would have been able to bring had he survived may be brought by Mr. Wichterman's estate.

117. Mr. Wichterman's estate has, by reason of Mr. Wichterman's death, suffered pecuniary loss, and has or will incur expenses for the costs of Mr. Wichterman's funeral, the costs of Mr. Wichterman's headstone, and the costs of administering Mr. Wichterman's estate.

118. As a direct and proximate result of the conduct of all defendants, Mr. Wichterman experienced extraordinary physical and emotional pain and suffering before his death, and, as a result of his death, suffered complete loss of earnings and earnings capacity.

119. Plaintiff, via this survival action, seeks damages for these harms caused to Mr. Wichterman.

## VI. CLAIMS FOR RELIEF

### COUNT I
### Plaintiff v. Defendants Avery, Gwalthney, Joyner, and Wahabu
### Federal Constitutional Claims

120. Defendants Avery, Gwalthney, Joyner, and Wahabu were deliberately indifferent to Mr. Wichterman's serious medical needs and thereby violated Mr. Wichterman's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States

Constitution and/or Mr. Wichterman's right to due process of law under the Fourteenth Amendment to the United States Constitution.

**COUNT II**
**Plaintiff v. Defendants City of Philadelphia and Corizon Health**
**Federal Constitutional Claims**

121. The violations of Mr. Wichterman's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendants City of Philadelphia and Corizon Health, which have, with deliberate indifference, failed to establish policies, practices, procedures and training regarding the treatment of arrestees suffering from drug overdose.

**COUNT III**
**Plaintiff v. Defendants Wahabu, Tehum, Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey**
**State Law Negligence Claims**

122. Defendant Wahabu had a duty to comply with generally accepted medical standards of care in his medical treatment of Mr. Wichterman.

123. Defendant Tehum had a duty to establish policies, practices and procedures to ensure that arrestees experiencing drug overdoses, like Mr. Wichterman, received proper monitoring and emergency treatment

124. Defendant Wahabu and Tehum, violated their respective duties of care to Mr. Wichterman.

125. The defendants' violation of their duty of care to Mr. Wichterman was a direct and proximate cause and a substantial factor in bringing about Mr. Wichterman's damages as outlined above, and, as a result, defendants are liable to plaintiff.

126. Because defendant Wahabu was were acting as an agent, servant, and/or employee of defendant Tehum, and because this individual defendant was acting within the scope and course of his employment, and under the direct control and supervision of defendant Tehum, defendants Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey are, likewise, liable to plaintiff on the basis of *respondeat superior* liability.

**COUNT IV**
**Plaintiff v. Defendants Lefkowitz, Tirschwell, Ladele,**
**Rice, King, Finger, and Sholey**
**Fraud**

127. Defendants Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey personally participated in, directed, and/or facilitated a fraudulent corporate restructuring designed to strip assets from Corizon Health, Inc., while leaving a shell entity to absorb liabilities owed to tort claimants, like plaintiff.

128. Additionally, these defendants fraudulently removed substantial funds from Corizon Health and directed them to entities over which they had exclusive, or near-exclusive, control.

129. Under Pennsylvania law, corporate officers and directors who personally participate in fraudulent activity are individually liable for corporate liabilities.

130. The conduct of these defendants was willful, wanton, and in reckless disregard for the rights of tort claimants, like plaintiff, and was undertaken with the specific intent to deprive plaintiff of the ability to recover for injuries caused by the tortious conduct of Corizon’s agents and employees.

131. As a direct and proximate result of these defendants’ fraudulent conduct, plaintiff has been deprived of the ability to recover against the entity legally responsible for injuries caused to the Estate of Daniel Wichterman.

**COUNT V**
**Plaintiff v. Defendants Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey**
**Piercing the Corporate Veil and Alter Ego Liability**

132. Defendants Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey directly and indirectly exercised domination and control over Corizon without regard to corporate formalities and/or aided and abetted the exercise of such domination and control.

133. The actions of these defendants to, among other things, facilitate a fraudulent restructuring of Corizon Health and to siphon funds from Corizon into entities over which they had exclusive or near-exclusive control renders each defendant personally liable to plaintiff under alter ego and veil-piercing theories of liability under Pennsylvania law.

134. As a direct and proximate result of these defendants' conduct, plaintiff has been deprived of the ability to recover against the entity legally responsible for injuries caused to the Estate of Daniel Wichterman.

135. As such, the personal liability of these defendants may not be shielded by any protections offered by the corporate form.

## VI. REQUESTED RELIEF

**Wherefore**, plaintiff respectfully requests:

A. Compensatory damages as to all defendants;

B. Punitive damages as to defendants Avery, Gwalthney, Joyner, Wahabu, Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey;

C. Reasonable attorney's fees and costs;

D. Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
215-925-4400
215-925-5365 (fax)
jfeinberg@krlawphila.com

*Counsel for Plaintiff*